THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HANS FIELD, Appellant.

First Department, February 7, 1941.

*Samuel W. Brodsky* of counsel [*Josephine Zafonte* with him on the brief], for the appellant.

*Sol. Boneparth* of counsel [*Herman J. Fliederblum* with him on the brief; *Samuel J. Foley, District Attorney*], for the respondent.

MARTIN, P. J. The record discloses that this entire controversy grows out of a family feud. The defendant has been a physician for more than ten years. The complaining witness, his mother-in-law, came to this country about two years before the alleged assault which took place on March 11, 1940. Since her arrival she and her daughter have engaged in a series of bitter quarrels with her son-in-law.

The matrimonial difficulties of defendant and his wife, instigated at least in part by this complainant, have been before the courts on several occasions. This defendant instituted an action for a separation in the Supreme Court. The court found that he was not entitled to a separation on the ground of cruel and inhuman treatment and that the conduct of his wife did not render it unsafe and improper for them to live together, but several findings indicate that this complainant and her daughter were endeavoring to injure the defendant in the practice of his profession. The court there found:

" That the defendant [daughter of complainant herein] acting in conjunction with her mother, one Hansie Rosenberg [complainant herein], did write or permit to be written a series of letters to the officials of the Montefiore Hospital.

" That the said correspondence was intended to and did cause considerable annoyance and embarrassment to plaintiff and the officials of said hospital to the extent that plaintiff was compelled to and did actually resign his position as assistant in dermatology and radio therapy at said hospital.

" That, as a result of said resignation, the plaintiff has not been able to hospitalize and care for his patients requiring hospitalization, and has thus lost a considerable number of patients and has sustained considerable monetary damages as a result thereof.

" That on divers occasions the defendant maliciously and wilfully and without provocation or just cause slandered the plaintiff in the presence of plaintiff's professional patients, and did wilfully and maliciously interfere with his practice to his great detriment.

" That on or about the 5th day of November, 1939, at No. 1675 Grand Concourse, in the Borough of Bronx, City and State of New York, the defendant did maliciously and wilfully interfere with plaintiff's professional practice by uttering slanderous and insulting remarks to one Ruth Hellman, a professional patient of plaintiff's, and did on the same occasion forcibly eject said Ruth Hellman from plaintiff's office."

Although the conduct of the complainant herein is referred to only in the first of the five findings set forth above, an examination of all throws considerable light on the status of this complainant, her daughter and the defendant.

On the morning of the alleged assault a proceeding involving this defendant and his wife was on the calendar in the Court of Domestic Relations. Prior to that time, because of quarrels between the parties, the police were called in on at least twenty occasions. On the day of the alleged assault complainant, who did not reside with defendant and her daughter but lived several blocks away, went to the apartment where defendant maintained his home and his office. Although she testified on cross-examination that she did so to meet her daughter and accompany her to the court, she had stated on direct examination that she had gone to the office the preceding day " for the purpose of inquiring about support for my daughter, but the doctor wasn't home." Under the circumstances it is far more likely that the complainant " sought out " the defendant in an attempt to further embarrass and annoy him.

The defendant denied the charge that he assaulted the complainant. He testified that he twice requested her to leave but she refused and then " tore down " his glasses, bending the frame and causing a slight contusion on the side of his face. He says he then pushed her away and the complainant fell to the floor.

The daughter of the complainant called an ambulance and the police. The complainant refused to permit the ambulance doctor to examine her at the scene of the alleged assault and insisted on being taken to the hospital. This was done. The complainant was asked how long she remained in the hospital and said, " I left at once because I have to pay, and I have no money to pay." Despite the presence of witnesses who could have testified to the physical condition of the complainant, she called only her daughter to testify to the injuries alleged to have been inflicted by the defendant.

The trial court convicted the defendant on the very unreliable testimony of the complainant and her daughter. An analysis of that testimony clearly establishes that it was grossly exaggerated and that the guilt of the defendant was not proved beyond a reasonable doubt.

The judgment should be reversed and the information dismissed.

GLENNON, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Judgment unanimously reversed and the information dismissed.